## FISHER VS. THE KUTZTOWN SAVINGS BANK.

In a suit against the endorser of a promissory note defence cannot be made on the ground that the notary public who protested the note was a stockholder in the bank; nor that the bank was not allowed by its charter to discount notes.

Usurious interest can be deducted from the principal, but does not defeat the right to recover the amount due.

Error to Common Pleas of Berks County.  No. 276 January Term, 1883.

This case was tried before the Court without a jury.  The facts found were as follows:

1. On the — day of April, 1870, the plaintiff became the holder of a promissory note of the date of April 11, 1870, made by Nicholas Hunter, to the order of the defendant, for the payment of two thousand dollars, one year after date, endorsed by the defendant, and bearing a written direction to credit the drawer, signed by defendant.

2. That said note was duly protested; the maker failed to

pay the note when it fell due, of which notice was given at the time of the maturity of the note to the defendants.

3. The note was made, endorsed and came into plaintiff's hands in the following manner: The note was signed by said Hunter, and was by him given to the bank, plaintiff, on the date, or a few days thereafter—it did not then bear the signature of defendant. The cashier of the bank agreed to accept it and pay the money therefor to Hunter, upon the promise and representation of the latter that the defendant would endorse it for his, Hunter's benefit. On the strength of said promise and representation, the bank accepted the note, discounting it for $201.00. $1,799.00 was given to Hunter by crediting him with that sum in the bank, he having an account there. Before the discounting of the note defendant had promised Hunter to endorse for him, but this particular note was not named. The defendant, with a knowledge of the arrangement regarding the note theretofore made between the plaintiff and Hunter, subsequently came to the plaintiff's place of business, endorsed the note, and signed the written direction that Hunter should be credited with the proceeds.

4. The Notary Public, who protested the note, was D. B. Snyder. At the time of the protesting he was a stockholder of the plaintiff.

5. Of the interest paid by Hunter, as aforesaid, $80.00 was in excess of the rate of six *per centum per annum.*

6. The defendant had a balance due him on the books of the bank at the time of the maturing of this note of $404.44, which the plaintiff has applied as a credit on the debt represented by the note in suit.

7. The plaintiff received out of the estate of said Hunter on account of the indebtedness created by this note, the sum of $299, (when this was realized does not appear—it is treated as a payment made at the time of the maturing of the note.)

8. The Kutztown Savings Bank became a corporation by virtue of an Act of the General Assembly of Pennsylvania, approved March 12, 1869, P. L. 365. Said Act provided that said corporation should be capable to hold and dispose of prop-

erty, to sue and be sued, plead and be impleaded, answer and defend in Courts of law or equity, or in any place whatever, and to make, use and have a common seal, and the same to alter and renew at pleasure and generally to do every act and thing necessary to carry into effect the provisions of the enactment and promote the object and design of this act of incorporation, to be located in the County of Berks. Provided, that a misnomer of the said corporation in any instrument shall not vitiate the same, if the intent of the parties can be clearly ascertained. And, provided further, that nothing in this act contained shall be so construed as to confer upon said corporation banking privileges, or so as to exempt the same from the operation of the laws of this Commonwealth prohibiting the issue of bank notes or engagements of credit in the nature thereof. That the business of said corporation shall be to receive on deposit from time to time, such sums of money, not less than ten cents, as may be offered by tradesmen, clerks, mechanics, laborers, servants, minors, married women and others, and to invest the same in the stocks of this Commonwealth, or of the United States, or in stocks or bonds of any city, authorized to be issued by any act of this Commonwealth, or in other stocks or in bonds and mortgages and other approved and solid securities.

9. That the plaintiff was authorized by its charter to invest its money in promissory notes with endorsers, and that the proper officers of the plaintiff approved the paper in suit as an investment.

The conclusions of law were as follows, per

ALBRIGHT, P. J.:

1. It cannot be inquired of and determined in this issue whether or not Snyder, the Notary Public, who protested the note in suit was or was not at the time of protesting a stockholder of the bank.

2. That the accepting of interest from Hunter exceeding the rate of six *per centum per annum* does not prevent a recovery in this suit of the amount due on the note; the defendant is entitled to have deducted from the principal the usurious interest thus paid, to wit: $80.00.

3. Whether or not the plaintiff, by its charter, is authorized to invest in property of the character of the note in suit can not be tried in this issue. No fact exists which constitutes a defense on the note itself—the defendant is liable to pay it according to his undertaking as endorser, and he cannot be heard to challenge the right of the plaintiff under its charter to hold the note. When the plaintiff had introduced in evidence the note with proof of notice to the defendant at maturity of non-payment by the maker, the plaintiff was *prima facie* entitled to recover. Even if the accepting of the note had not been authorized by the charter, such illegality is not apparent on the contract, and from plaintiff's presentation of its case the defendant could not introduce the charter in evidence to defeat a recovery.

4. The plaintiff is entitled to judgment against the defendant for the balance owing on the note, being $2,000 less the payments, to wit: Said $80.00, said $404.44, and said $209.00, a total credit of $783.44, with interest on the balance from April 14, 1871, to wit: the sum of two thousand and sixty 33-100 dollars ($2,060.33.)

---

The act of 22 April, 1874, providing for trials by the Court without a jury, requires the Court to state separately and distinctly the facts found, the answers to points submitted in writing by counsel, and the conclusions of law. By this is meant only that facts material to the issue trying and based upon evidence relevant to the case, shall be stated. When the Court had found the facts decisive of the issue, as set forth in the foregoing conclusions of law, its duty in this respect was discharged. However, as evidence was received on the trial, which in the subsequent consideration of the case was deemed to have no bearing upon the issue, it has been thought to be best to find the facts deduced from such immaterial evidence. This applies to the 4th, 8th and 9th findings of fact.

The Court in addition to the conclusions hereinbefore stated will notice and pass upon another ground of defense. Defendant's counsel in the argument distinctly raised another question which the Court, although not legally required to do so,

will answer in the same manner as if a written point embodying the proposition had been submitted, and as if the Court had regarded it as material.  That proposition is: that the plaintiffs became the holder of the note in suit in violation of the provisions of its charter.

This cannot be affirmed.  The defendant insists that the bank *discounted* this note, and that that was an exercise of banking privileges prohibited by the act of incorporation. Banks are of *deposit*, of *discount* or of *circulation*; they generally perform all these operation; Bouv. Dict.  Now, while the Court cannot assent to the contention of plaintiff's counsel, that the proviso prohibiting banking privileges is to be construed to apply only to the issue of bank notes, yet when that proviso is read in connection with the express powers granted by what follows in the act, it must be held that the bank was not forbidden to take and hold this note.  It ought here to be stated what has been omitted in the findings of fact, that the charter provides for the election of nine truseees, who have power to appoint such officers as they may deem necessary to regulate interest on deposits, as often as they deem proper, to declare a dividend of the interests and profits, and generally to manage the affairs of the corporation.  For the faithful keeping and appropriation of the moneys entrusted to them, the trustees were to give bond in such sum as the Court of Common Pleas of Berks County should direct. Familiar rules of construction require that said proviso be taken as limiting and explaining the first section of said act, to which it is attached, and not to render it void, positive grants of power contained in portions of the act following, and which are manifestly necessary to carry into effect the plain purposes of the incorporation.  The office of a proviso, generally, is either to except something from the enacting clause, to restrain its generality, or to exclude some possible misinterpretation of it as extending to cases not intended by the Legislature to be brought within its provisions; Minis vs. United States, 15 Peters, 423 ; Wayman vs. Southard, 10 Wheat, 31.

Express power was granted to accept whatever deposits were offered, therefore this privilege appertaining to banking

3 Wa 31

was not denied. The purpose of the enactment was to enable the stockholders to realize dividends from the profits made. To attain this and to secure the depositors the corporation was authorized to invest the deposits in the stocks of this Commonwealth or of the United States, or in stocks or bonds of any city, or in stocks or in bonds and mortgages and other approved or valid securities. It is objected that this note is not an "approved and valid security." Bouvier defines a security to be "an instrument which renders certain the performance of a contract." This must be understood to mean that which it is believed will render certain such performance. No obligation absolutely insures performance. The obligations of States and municipalities, of individuals fortified by a pledge of real or personal property, and shares of stock in corporations sometimes prove valueless for various reasons. They may prove worthless as well as may a mere personal obligation.

In Fowler vs. Scully, 22 P. F. S., 462, Justice Agnew points out that the safety of banks is promoted by depending on the well known standing of parties to commercial paper, rather than upon a hypothecation of stocks and real estate. It would be a view entirely too narrow to hold that a "valid security" means only a pledge of real estate, that it excludes the personal undertaking of one possessed of sufficient property, and of good standing. Men differ as to what does afford security. The diversity of the investments of well informed and prudent men show this.

Who was to decide as to what should be regarded as valid securities for the Kutztown Savings Bank and what should be approved as such? Not a board of brokers, not some public officer, not the general public. It was the trustees and officers of the corporation who represented the stockholders. They did approve of the security afforded by the defendants' endorsement of Hunter's note. The defendants' undertaking was to pay the note if the maker did not, provided he, the endorser, received due notice of that default. That undertaking was evidenced by his endorsement of the note made by the latter, the same as if he, the defendant, had executed

and given a separate bond for the payment of the money on the condition implied by the contract of endorsement. Webster's definition of a *security* is "Anything given or deposited to secure the payment of a debt or the performance of a contract, as a bond with surety, a mortgage, the indorsement of a responsible man, a pledge, &c."

But it is objected that the plaintiff *discounted* this note; that he was not *investing*. Surely it cannot matter by what method the evidence of indebtedness was obtained, whether it was by a purchase of the note or a discounting of it. The managers of the corporation had a right to invest in promissory notes secured by endorsers, if they saw fit to regard such paper as good.

As to the reasons for the conclusions of law not hereinbefore stated. The objection to the validity of the probate, or rather to the proof of notice by the notarial certificate, is based upon the 1st Sect. of the Act of 14 April, 1840; Purd. Dig., 1095. "No person being a stockholder, director, cashier, teller, clerk, or other officer in any bank or banking institution, or in the employment thereof, or holding or exercising any judicial office in this Commonwealth, or any office or appointment of trust or profit under the constitution or laws of the United States, shall at the same time hold, exercise or enjoy the office of Notary Public; and no person shall be appointed to said office in any city or county who shall not have resided therein one year, immediately preceding his appointment."

In Browne vs. The Bank, 6 S. & R., 484, it was held regarding a protest made by a notary that "public convenience requires that a certificate under a seal of this kind should be *prima facie* evidence, without proving that the person who used it and signed the certificate was a notary commissioned by the Governor."

That the title of the notary to his office cannot be determined in this issue I regard as so plain a proposition that it is unnecessary to support it by argument or authority. As was said in McKim vs. Somers, 1 P. & W., 302, the time to determine whether an official under an alleged state of facts is

entitled to hold an office is when an information against him has been filed. The official act of a duly commissioned officer or an officer *de facto* cannot be questioned collaterally; Clark vs. Commonwealth, 5 Cas., 129 ; Cornish vs. Young, 1 Ash., 153 ; Hudson vs. Smith (S. C. U. S.,) 18 Am. L. R., 525.

As to the second conclusion. It was contended that the receiving of interest exceeding the rate of six *per centum per annum* was forbidden by the Act of June 27, 1839, P. L. 515, relating to savings institutions and loan companies ; (Manufacturers' &c., Loan Co. vs. Conover, 5 Phila. R., 18, decided by the District Court of Philadelphia, was cited) and that, therefore, the plaintiff could not recover. The Court can find no authority or discover any satisfactory reason for visiting upon the plaintiff such consequences because it received interest exceeding the legal rate.

The Act of May 28, 1858, P. L. 622, does not declare a contract void when interest *exceeding* said rate is received, or contracted for. It only permits the debtor to retain and deduct the excess, or where the debt has been discharged, to sue within six months for the usurious interest paid. That statute applies to artificial as well as natural persons. The consequences of receiving or contracting for more than six per cent. is the same in the case of a corporation as of an individual ; the excess can not be recovered ; the debt is not forfeited. The Court has treated this transaction as a security given for a loan and not a sale of the note, and has allowed credit on the principal for the amount paid over six per centum per annum.

As to the third conclusion. Can the defendant in this issue challenge the right of the plaintiff to recover on this note, because of an alleged violation of the charter in obtaining the paper because the note was *discounted* and the plaintiff had no discounting privileges, and because it is an evidence of indebtedness of a character which the plaintiff, by its charter, was not authorized to invest in ? The affirmation of this proposition was strongly urged by defendant's counsel. If this defense were sustained, it would establish a rule relating to

negotiable paper which would be somewhat startling. It would be deciding that the maker, or endorser in blank, with notice of non-payment, who has no legal or equitable defense upon the note itself, without pretending even that a party other than the plaintiff is of right the holder, may avoid his liability on the ground that plaintiff is not authorized to hold that species of property promissory notes. Where the making and indorsing is admitted, and no fraud, want or failure of consideration payment or set-off is alleged, it is difficult to perceive what defense there can be in a suit by the holder of a promissory note. A defense under such circumstances can be recognized only if a plain rule of law, is found to permit it. Defendant's counsel assert that Fowler vs. Scully, *supra*, is authority for the position in this reference assumed by them. There a National Bank proceeded by *scire facias* on a mortgage containing a recital that it was given to secure the bank for notes hereafter to be discounted for the mortgagor. It was held that the mortgage could not be enforced, because the National Banking Act prohibited associations formed under it, from purchasing or holding real estate, except in certain specified cases, and that a mortgage to secure future advances, was not within the exceptions. The ground upon which that decision was based, was that the mortgage itself was illegal; that the law would not suffer itself to be prostituted by entertaining a suit on a contract which was in contravention of law, was illegal at the start, and which on its face showed its illegality.

After stating the rule the Court said, "it only remains to state the test adopted, the test, says Judge Duncan in Swan vs. Scott, 11 S. & R., 164, whether a demand connected with an illegal transaction is capable of being enforced in law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot open his case without showing that he has broken the law, the Court will not assist him, whatever his claim in justice may be upon the defendant," * * * "the mortgage of Fowler to the plaintiff is on its face a security for the future advances and the schedule of the debts claimed under it shows also their subsequent character. The plaintiff could not open its

case, therefore, without disclosing that it sought the enforcement of an illegal security, and forbidden by the law. The action must, therefore, fail." According to that test there is nothing to prevent a recovery here. When the note was in evidence and notice to the defendant as endorser shown, the plaintiff had made out a case *prima facie*, the note itself contains or suggests nothing illegal. It is a negotiable promissory note. The plaintiff parted with its money when the note was taken. The defendant does not even assert that a party other than the plaintiff is the holder. If that were alleged i would be no defence; it might entitle the defendant after judgment to pay the money into Court for the purpose of having the rights of the rival claimants to it decided; Ballentine vs. McGeagh, 4 Brewster, 95. The only conclusion possible is that what is here alleged cannot avail the defendant.

And now, November 6, 1882, the Prothonotary is directed forthwith to give notice to the parties to this action or their attorneys, of the fact that the Court has filed its decision of this case.

_____

Fisher then took a writ of error, complaining of the entry of judgment against him.

*Messrs. C. H. Ruhl, A. B. Wanner and J. H. Jacobs, Esqs.,* for plaintiff in error, argued that the charter of defendant in error, Act March 12, 1869, P. L. 365, provides that nothing therein contained shall be construed as giving said corporation banking privileges, &c., and discounting notes is a banking privilege; Wolf vs. Goddard, 9 Watts, 550; Bank vs. Doudridge, 12 Wheaton, 64; Venango Bank vs. Taylor, 56 Pa., 14; Mechanics' Saving and Loan Co. vs. Conover, 5 Phila., 21; Fowler vs. Scully, 72 Pa., 462; Swan vs. Scott, 11 S. & R.,164; Thomas vs. Brady, 10 Pa., 170; Scott vs. Duffy, 14 Pa., 20; Evans vs. Dravo, 24 Pa., 65; Booth vs. Hodgson, 6 D. &. E., 409; Edgar vs. Fowler, 3 East, 225; Mitchell vs. Smith, 1 Binney, 110; Leazure vs. Hillegas, 7 S. & R., 313; Biddis vs. James, 6 Binney, 329; Seidenbender vs. Charles, 4 S. & R., 160; Columbia Bank vs. Haldeman, 7 W. & S., 233; Cappell vs. Hall, 7 Wallace, 558; Bank vs. Earle, 13 Peters, 587.

*Messrs. Edward Harvey and John Ralston, contra,* argued that where a man borrowed money from a corporation he cannot set up a plea of *ultra vires* to defeat a recovery; Leazure vs. Hillegas, 7 S. & R., 313; Goundie vs. Northampton Water Co., 7 Pa., 233; Northampton Co.'s Appeal, 30 Pa., 305; Oil Creek R. R. vs. Penna. Transportation Co., 83 Pa., 160; Bly vs. Bank of Titusville, 79 Pa., 453; Wright vs. Antwerp Pipe Co., 12 W. N. C., 325.

The Supreme Court affirmed the judgment of the Common Pleas on March 12, 1883, in the following opinion,

PER CURIAM:

The facts found by the learned judge under the reference fully vindicate his conclusions of law. The corporation had an undoubted right to loan money. Taking this note to secure the return of the money loaned on the endorsement of the plaintiff in error is not in violation of its corporate powers. The excess of interest was properly disallowed, and judgment was correctly entered for the residue of the claim.

Judgment affirmed.